UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| DIRECTV, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>CRAIG PATRICK,<br><br>Defendant. | No. 03-12292-MLW<br><br>**DECLARATION OF JAMES F. WHALEN** |

James F. Whalen declares as follows:

1. My name is James F. Whalen. I am over eighteen (18) years of age and reside in Los Angeles County, California. I am a retired Special Agent from the Federal Bureau of Investigation ("FBI"), and I am currently employed as the Senior Director in DIRECTV's Office of Signal Integrity. As Senior Director in charge of DIRECTV's Office of Signal Integrity, my responsibilities and duties include the investigation of allegations regarding the manufacture and distribution of satellite signal theft devices, as well as allegations concerning unauthorized reception and use of DIRECTV's satellite television programming. I have led or overseen several hundred investigations of individuals and businesses engaged in the design, manufacture, distribution, and sale of pirate access cards and other devices intended to facilitate the unlawful reception and decryption of DIRECTV's satellite transmissions of television programming. I have been employed by DIRECTV for over 4 years. I have personal knowledge regarding this matter, and, if called, would testify as follows.

DECLARATION OF JAMES WHALEN
NO. 03-12292-MLW – Page 1

2. On November 29, 2001, with the assistance of the United States Marshal Service, DIRECTV executed Writs of Seizure, issued by the United States District Court for the Central District of California, at a residence in Westfield, Indiana. During and subsequent to this raid, DIRECTV came into possession of a substantial body of sales records, shipping records, email communications, credit card receipts and other records related to a major source of pirate technologies, called Smart Card Solutions, Inc., d/b/a/DSS-Pro. This entity was the subject of intensive piracy investigations by DIRECTV both before and after the November 29, 2001 raid. A true and correct copy of a portion of the subject records that relate to the defendant Craig Patrick is attached hereto as Exhibit A. Those records indicate that on or June 23 2001, defendant Patrick purchased a pirate access device called an "Atomic PUT" or an "Atomic Multi-Purpose" device. Those records also indicate that the defendant's address was: 54 Holly Lane, Holliston, Massachusetts.

3. As a result of its experience investigating and combating satellite signal piracy, DIRECTV was aware that at or around the time of defendant Patrick's purchase of his "Atomic Multi-Purpose" device, a market existed for the sale and distribution of P2/H and P3/HU cards that had been "glitched" or modified by devices like the "Atomic Multi-Purpose." Once "glitched," these altered DIRECTV access cards enabled their uses to decrypt (or unscramble) DIRECTV's programming without authorization from or payment to DIRECTV. I have been personally involved in investigations concerning pirate businesses who sell such illegally modified or "glitched" cards.

4. In addition, as a result of its long history investigating and combating piracy, DIRECTV was also aware of a service market, at or around the time of the defendant's purchase, being exploited by individuals who owned pirate access devices, like an "Atomic Multi-Purpose," that are capable of "glitching." Individuals who owned such pirate devices could use them to "repair" P2/H or P3/HU access cards belonging to others that had been previously illegally modified to pirate DIRECTV's signal and then subsequently disabled by one of DIRECTV's electronic counter measures ("ECMs") delivered via its satellite transmissions. Once "repaired" through application of "glitching" technology contained in devices like the "Atomic Multi-Purpose," the illegally modified DIRECTV access card could be used once again to pirate DIRECTV's satellite programming. I have personally been involved in investigations of satellite signal pirate operations that perform this illegal service.

5. Attached as Exhibit B is a true and correct copy of DIRECTV account information for defendant Craig Patrick. I have thoroughly reviewed defendant Patrick's account information.

6. The address on the account records for defendant Patrick corresponds to the address indicated for defendant Patrick on the records obtained from DSS-Pro during the November 29, 2001 raid referenced above.

7. DIRECTV's satellite television signal is encrypted – electronically scrambled – to prevent unauthorized reception. In order to receive and view DIRECTV signals, a person needs certain satellite hardware, including a DIRECTV

satellite dish, a DIRECTV integrated receiver/decoder (or "IRD"), and a DIRECTV access card. Paying customers of DIRECTV obtain this equipment, and the connecting cables and cords, at highly subsidized prices or for free. DIRECTV sells and distributes the satellite hardware necessary to receive DIRECTV programming.

8. Because defendant Patrick was a customer of DIRECTV, defendant Patrick would have necessarily possessed a DIRECTV satellite dish, a DIRECTV IRD, and a DIRECTV access card in order to view DIRECTV's programming in a decrypted format. Thus, once defendant Patrick had purchased the pirate access device referenced above (an "Atomic Multi-Purpose" device), he would have possessed all the equipment necessary, when used in combination, to illegally intercept DIRECTV's satellite signal.

9. There are a number of items in a subscriber's account history that indicate unauthorized access and either individually or in combination may alert DIRECTV or one of its investigators to such illegal activity in conjunction with evidence that a subscriber has purchased a pirate access device. Defendant Patrick's account history is similarly incriminating. After activating a new receiver and access card on his account in November 2000, the defendant failed to pay for his DIRECTV service and allowed his account to go into "write off" between December 2000 and March 2003. Approximately six months after letting his account go into arrears, defendant Patrick purchased his "Atomic Multi-Purpose" device. The purchase and use of an "Atomic Multi-Purpose" device is a clear indication of a customer's eagerness to continue illegal access

DECLARATION OF JAMES WHALEN
NO. 03-12292-MLW – Page 4

to DIRECTV television programming without payment to DIRECTV. Furthermore, purchase of an "Atomic Multi-Purpose" device indicates that the person already possessed one or more illegally modified DIRECTV access cards. There is no reason to purchase an "Atomic Multi-Purpose" unless the purchaser is in possession of a DIRECTV access card that has been hacked and disabled by an ECM or misuse. Therefore, the purchase of the "Atomic Multi-Purpose indicates that defendant Patrick possessed an illegally modified access card and began receiving DIRECTV's transmissions without authorization *prior to* the purchase of the pirate device.

10. At the time of the purchase of the "Atomic Multi-Purpose," as a former subscriber to DIRECTV programming, the defendant had all the necessary equipment to intercept and illegally decrypt DIRECTV's satellite signal during the same period of time that he was failing to pay DIRECTV for service to which he had subscribed. DIRECTV has discovered similar activity in the account records of numerous other signal pirates.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

DATED: October 20, 2004

_____
James F. Whalen

DECLARATION OF JAMES WHALEN
NO. 03-12292-MLW – Page 5