UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CABLEVISION OF CONNECTICUT, Limited Partnership, : : : Plaintiff, : : - against - : : TRICIA VALENTINE, : : Defendant. : | Civil Action No. **COMPLAINT** |

Plaintiff, Cablevision of Connecticut, Limited Partnership (hereinafter referred to as "Cablevision"), by its attorneys, Lefkowitz, Louis & Sullivan, L.L.P. and Day, Berry & Howard, LLP, as and for its Complaint herein against Tricia Valentine ("Valentine" or "defendant"), alleges the following:

## Summary of Claims

1.     This action seeks declaratory and injunctive relief and monetary damages on account of the above-captioned defendant's statutorily prohibited tampering with plaintiff's cable television system and unauthorized reception, or in the alternative, assistance in the unauthorized reception, of plaintiff's private telecommunications signals through the use of compatible bootleg "pirate" cable television decoding equipment to descramble and receive plaintiff's scrambled telecommunications signals without its authorization. Defendant has been engaged in the unauthorized reception and interception, or in the alternative, assistance in the unauthorized reception and interception of Cablevision's cable television programming services by use of an unauthorized, modified "pirate" cable television descrambling and decoding device or devices and equipment. The conduct alleged against defendant is in direct violation of Federal Statutes

1

specifically designed to prohibit the unauthorized reception of cable television programming -- 47 U.S.C. §§ 553(a)(1) and 605(a).

### Jurisdiction and Venue

2. This action arises under 47 U.S.C. §§ 553(a)(1) and 605(a).

3. This Court has original jurisdiction over this action under 28 U.S.C. section 1331. Venue is properly established in the District of Connecticut pursuant to 28 U.S.C. section 1391(b).

### Parties

4. At all times hereinafter mentioned plaintiff Cablevision of Connecticut is a Connecticut limited partnership that has business offices at 28 Cross Street, Norwalk, Connecticut 06851.

5. At all times hereinafter mentioned, defendant Tricia Valentine is an individual having a residential address at 58 Sunrise Hill Road, Norwalk, Connecticut 06851.

### Factual Background

### The Cable Operator

6. A Certificate of Public Convenience and Necessity has been duly awarded by the Connecticut Department of Public Utility Control to Cablevision pursuant to which Cablevision has the right to construct, operate, and maintain a cable television system in Cos Cob, Darien, Easton, Greenwich, New Greenwich, New Canaan, Norwalk, Old Greenwich, Redding, Stamford, Weston, Westport and Wilton, Connecticut. Cablevision provides cable television services to subscribers who request and pay for them.

7. Cablevision's programming is offered to its subscribers in "packages" of programming services. "Basic" and "Family" tiers are packages of programming services that a subscriber receives at a monthly rate. Subscribers may also elect to purchase certain premium programming services such as Cinemax, Home Box Office, and Showtime, for an additional monthly charge per service.

8. Additionally, Cablevision offers pay per view programming, a service enabling a subscriber to purchase individual movies, sporting events, or other entertainment for a per-event fee over and above the subscriber's regular monthly fee.

9. Each subscriber is entitled to receive only those programming services which he or she selects and purchases.

10. The signals for Cablevision's cable television programming services are received via satellite and transmitted from Cablevision's satellite reception facilities to subscribers' homes through a network of cable wiring and equipment (the "System"). In order for a subscriber to receive these transmitted cable television signals on his or her television set, Cablevision provides each subscriber with a device known as a "converter," which converts the multiple signals simultaneously transmitted over the System into different "channels" that can be viewed on subscribers' television sets.

11. To prevent subscribers from receiving programming services for which they have not paid, Cablevision encodes or "scrambles" the signals for specific programming services. Subscribers purchasing scrambled programming services are provided with a device known as a "descrambler" or "decoder," which is incorporated into the converter. The descrambler decodes the scrambled service so that the programming selected and purchased can be viewed clearly on

3

the subscriber's television set. Programming services not purchased by an individual subscriber will continue to be scrambled and therefore will not be viewable on that subscriber's television set.

12. Plaintiff's system is "addressable," meaning that the converter that Cablevision provides to each subscriber is programmed by a central computer to authorize viewing of purchased services. Each subscriber who purchases services that are scrambled would have his or her converter-decoder programmed by the Cablevision central computer to receive only those services selected and purchased.

13. The process of scrambling signals is a primary security method employed by plaintiff and other cable television operators to prevent subscribers from receiving services for which they have not paid.

14. It is possible for a dishonest individual to install an unauthorized or "pirate" converter-decoder (one illegally programmed to descramble all of plaintiff's programming services) onto the plaintiff's cable television system or otherwise tamper with plaintiff's equipment in order to receive all of Cablevision's scrambled programming without authorization and without making payment therefor.

15. Pay per view, which is one of the scrambled services, includes selections that typically range in cost from approximately $4.00 to $49.99. Pay per view programming is available throughout the day on a per event or movie basis. Premium services, which are also scrambled by Cablevision, range in price from approximately $1.95 to $14.95 per month per service, and packages of premium services range in cost between $40.75 and $80.95. Hence, a

"pirate" converter-decoder could conceivably steal hundreds of dollars worth of Cablevision's premium and pay per view services each month.

16. Theft of cable television service impacts negatively on the State of Connecticut, which derive franchise fees from cable operators' gross revenues. The lost revenues to cable operators adversely affects the ability of those operators to purchase and maintain high quality programming services for subscribers. Cable piracy also creates an unfair enrichment to "freeloaders," which is subsidized by honest, paying subscribers. Furthermore, the maintenance of unauthorized connections and use of pirate converter-decoders results in signal "leakage," which violates FCC regulations, and for which Cablevision may suffer the imposition of substantial fines and other sanctions.

17. Cablevision's signal is a private telecommunication not intended for public use.

**Defendant's Misconduct**

18. Defendant has been engaged in the ongoing unauthorized reception and interception of plaintiff's cable television programming services by use of "pirate" cable television descrambling and decoding equipment purchased by defendant from Explorer Electronics of Dyer, Indiana ("Explorer"), or, in the alternative, has assisted others in such unauthorized reception or interception.

19. Defendant purchased one or more "pirate" cable television descrambling and decoding devices and equipment from Explorer, a manufacturer and distributor of "pirate" cable television decoding devices.

20. Defendant used the "pirate" converter-decoder and descrambling devices obtained from Explorer at her residences to receive and intercept Cablevision's cable television programming services without Cablevision's authorization, or, in the alternative, has assisted others in the unauthorized reception and interception of such services by distributing such devices to them for such purposes.

21. The "pirate" equipment that defendant obtained from Explorer and thereafter used or distributed was modified to circumvent the security functions of Cablevision's scrambling technology. The "pirate" equipment obtained by defendant possess the illicit function of descrambling all scrambled "premium" and "pay-per-view" cable television programming services available on Cablevision's System without payment to, or authorization from, Cablevision.

22. At all times, defendant engaged in the unauthorized reception, or assisted in the unauthorized reception, of Cablevision's programming services with intent and specific knowledge that her use of such equipment enabled her and/or others to intercept and receive Cablevision's cable television programming services without Cablevision's authorization and without having made payment to Cablevision for reception of those programming services. Defendant's unauthorized reception of Cablevision's cable television programming services has been ongoing and continuous since the date that defendant purchased "pirate" device(s) from Explorer. Defendant engaged in the actions alleged herein for the purposes of her private financial gain and has acted at all times willfully and deliberately.

## Count I

## Violations of the Communications Act of 1934, as amended

23. Plaintiff incorporates by reference paragraphs 1 through 22, inclusive.

24. The "pirate" cable television converter-decoder equipment used by defendant or distributed by defendant to others was specifically designed to descramble plaintiff's encoded signals, thereby permitting reception of plaintiff's programming without payment for those services. Said conduct violates 47 U.S.C. sections 605(a) and 553(a)(1).

25. By using "pirate" cable television converter-decoder(s), defendant or others whom defendant assisted, were able to view all of Cablevision's premium, pay per view, and other scrambled programming without paying monthly or per event fees for said programming in violation of 47 U.S.C. sections 605(a) and 553(a)(1).

26. Cablevision's cable television programming services are "radio communications" within the meaning of 47 U.S.C. section 153(b) and are protected from unauthorized interception and reception under 47 U.S.C. sections 605(a) and 553(a)(1).

27. Defendant violated the Communications Act willfully and for purposes of her private financial gain.

28. Cablevision has not authorized or consented to the use of "pirate" converter-decoder(s) by defendant, nor has Cablevision authorized or consented to the rendering of assistance by defendant in the reception or interception of Cablevision's signals.

29. Cablevision is a "person aggrieved" by defendant's violations of the Communications Act, and Cablevision is authorized to institute this action against defendant under 47 U.S.C. sections 605(e)(3)(A) and 553(c)(1).

30. The violations of 47 U.S.C. sections 605(a) and 553(a)(1) committed by defendant have injured and will continue to injure Cablevision's ability to maximize its revenues by depriving it of the benefit of subscribers to its programming services and by injuring its goodwill and reputation. As a further result of such violations, defendant, or those whom she assisted, has received and will continue to receive illegal and unjust gains by avoiding payment to Cablevision for the reception of Cablevision's premium, pay per view and other scrambled programming.

31. Moreover, honest paying subscribers may have their services negatively affected as a result of defendant's violations.

32. Upon information and belief, unless restrained by this Court, defendant will continue to violate 47 U.S.C. sections 605 and 553. Defendant engaged in the unauthorized use of radio communications, conduct prohibited by 47 U.S.C. sections 605 and 553. Moreover, defendant knew or should have known that the use of such unauthorized equipment was prohibited. Such violations of the Communications Act have caused and will continue to cause Cablevision irreparable harm. Cablevision cannot practicably determine the amount of lost revenues resulting from defendant's unlawful conduct.

33. In addition to diminishing Cablevision's revenues, defendant's unlawful conduct injured Cablevision's reputation and goodwill, its ability to attract and finance the future acquisition of quality services, and impairs its ability to enhance its future growth and profitability. Moreover, the towns within Connecticut that grant franchises to Cablevision lose franchise fees as a direct result of the defendant's misconduct.

34. Plaintiff has no adequate remedy at law to redress defendant's violations of 47 U.S.C. sections 605(a) and 553(a)(1).

**WHEREFORE**, plaintiff requests that this Court grant the following relief:

(1) Declare that defendant's unauthorized use, or, in the alternative, assistance in the unauthorized use, of equipment designed to decode encrypted cable television signals violated Title 47, U.S.C. sections 605(a) and 553(a)(1), and that such violations were committed willfully and for purposes of defendant's direct or indirect commercial advantage or private financial gain; and

(2) In accordance with Title 47, U.S.C. §§ 605(e)(3)(B)(i) and 553(c)(2)(A), enjoin defendant, defendant's agents, servants, employees, affiliated business entities, successors, assigns, and any entities or persons controlled directly or indirectly by defendant or acting on defendant's behalf from the use, sale, modification and/or distribution of electronic equipment enabling the unauthorized interception of cable television programming services, from aiding and abetting or engaging in the interception, divulgence, reception or display of the cable television programming, service or signal of plaintiff, whether transmitted by air or by cable, without the express authorization of plaintiff, and from connecting, attaching, splicing into, tampering with or in any way using plaintiff's system for the purpose of obtaining any of the programming services of plaintiff without plaintiff's express authorization, and from manufacturing, purchasing, obtaining, utilizing, installing, or possessing any device or equipment capable of descrambling, intercepting, receiving, decoding or in any way making available the programming and services of plaintiff without plaintiff's authorization; and,

(3)(a) In accordance with 47 U.S.C. § 553 (c)(2)(B) and (c)(3)(A), award plaintiff statutory damages of up to a total of $10,000.00 and, in addition, enhanced damages of up to a total of $50,000.00, assessed against defendant, for all of defendant's violations of 47 U.S.C. §

553 (a)(1) involving the unauthorized reception or interception of plaintiff's cable television services or the defendant's assistance in the unauthorized reception or interception of plaintiff's cable television services or, in the alternative;

(b) In accordance with 47 U.S.C. § 605 (e)(3)(B)(ii) and 605(e)(3)(C), award plaintiff statutory damages of up to $10,000.00 for each of defendant's violations of 47 U.S.C. § 605 (a) involving the unauthorized reception or interception of plaintiff's cable television services or, in the alternative, statutory damages of between $10,000.00 and $100,000.00, plus enhanced damages, for each violation of § 605(a) and 605(e)(4) involving defendant's assistance in the unauthorized reception or interception of plaintiff's cable television services by means of defendant's sale or distribution of the equipment at issue for the unauthorized reception and interception of plaintiff's cable television services; and

(4) In accordance with 47 U.S.C. §§ 553 and 605, direct defendant to pay plaintiff all of plaintiff's costs, investigative expenses and reasonable attorneys' fees; and,

(5) Grant such other and further relief as is just.

Dated: Jericho, New York
   1|3|    , 2004

Respectfully submitted,

**LEFKOWITZ, LOUIS & SULLIVAN, L.L.P.**
Attorneys for the Plaintiff
**CABLEVISION OF CONNECTICUT, L.P.**

By: _____
A MEMBER OF THE FIRM
350 Jericho Turnpike, Suite 300
Jericho, New York 11753
(516) 942-4700

Dated: Stamford, Connecticut
       February 17, 2004

DAY, BERRY & HOWARD, LLP
Attorneys for Plaintiff
**CABLEVISION OF CONNECTICUT, L.P.**

By: _____
    **JONATHAN G. TROPP**
    Federal Bar Number: 11295
    **ELIZABETH CORWIN ORAM**
    Federal Bar Number: 22138
    One Canterbury Green
    Stamford, Connecticut 06901
    (203) 977-7300

wrl:connecticut.doc